### Paducah Finance Corporation v. Jones.

(Decided December 11, 1928.)

### Appeal from Marshall Circuit Court.

1. Appeal and Error.—In suit involving garnishment of proceeds of note due to defendant by garnishee after payment of mortgage secured by note, finding by chancellor that garnishee held note of defendant as security for indebtedness on premises mortgaged to garnishee, and not as security for separate note held by garnishee, could not be disturbed, where evidence was conflicting and witnesses for plaintiff were wholly disinterested.

2. Trial.—In suit involving proceeds of note due to defendant by garnishee, evidence of contract between defendant and another to show disposition of payments to defendant was not erroneously admitted, where similar testimony was introduced by plaintiff, and evidence of contract was merely cumulative.

3. Garnishment.—Note placed by defendant with garnishee for special purpose could not be held by garnishee and proceeds applied on another indebtedness to garnishee.

HENRY TURNER for appellant.

E. L. COOPER and C. B. COX for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellee, Jones, instituted two suits against a number of defendants, one of whom was D. L. Riley. He sought to recover on two notes which had been signed by Riley along with others. A general order of attachment was issued and executed on the Paducah Finance Cor-

poration, the appellant, on January 11, 1926. The attachment was served on appellant in the second suit on January 20, 1926. The appellant filed an answer to garnishee, and stated that it was not indebted to D. L. Riley in any sum. The appellee filed an amended petition and cross-petition, in which he alleged facts tending to show that the answer of appellant was not in accordance with the facts. He alleged that on July 1, 1925, D. L. Riley sold a farm to Sophronia Herzog Koerner; that at the time he was indebted to appellant in the sum of $1,200, and the farm had been mortgaged to secure that indebtedness; that appellant extended the time of payment of that debt until January 1, 1926, whereupon Riley placed a note for $1,000, executed to him by Mrs. Koerner in part payment for the land, with appellant, as collateral to secure the payment of the $1,200 note; that this was done for the protection of Mrs. Koerner and to make certain the satisfaction of the mortgage; that the $1,200 was thereafter satisfied on January 1, 1926, and that the $1,000 note which had been put up as collateral automatically became the property of Riley; that the appellant did not return the note to Riley, but collected it from Mrs. Koerner on January 25, 1926, retaining the proceeds. The note and interest at the time it was paid amounted to $1,034.17.

Responding to this pleading of appellee, the appellant denied that the $1,000 note was put up as collateral to secure the $1,200 note, and alleged that Riley was not only owing appellant the $1,200 note on July 1, 1925, but that he was also indebted to it in the sum of $1,120, evidenced by another note which he had signed and which was unsecured; that the $1,000 note was put up to secure the $1,120 note pursuant to an agreement between appellant and Riley that appellant would extend the time for the payment of the $1,200 note and would not sue on the other if he would thus secure it.

D. L. Riley testified in most positive language that the $1,000 note was put up to secure the $1,200 note; that at the time he did not know that appellant held the other note which he had signed and which was later transferred by the payee to appellant; that he made no agreement to put up the $1,000 note to secure the $1,120 note. He goes into details about the arrangements concerning the entire transaction. He is corroborated by Mrs. Koerner, and by Judge Puryear, who was her attorney.

If the evidence offered by appellee is true, the $1,000 note was put up for a special purpose, and that was to secure the payment of the $1,200 note so that Mrs. Koerner would be protected in purchasing the land with the mortgage against it. At the time the note was delivered to appellant an indorsement was made on the $1,200 note showing that the $1,000 note was put up as collateral to secure it.

On the other hand, Mr. Miller, the president of appellant, is equally positive that he made the agreement with Riley that the $1,000 note should be put up to secure the $1,120 note; that the indorsement on the $1,200 note, made at the time the $1,000 note was delivered, was made in his absence, and was a mistake which was thereafter corrected by attaching the $1,000 note to the $1,120 note and making the proper indorsement on it. He testified that Riley thereafter admitted that the $1,000 note was put up to secure the $1,120 note. He was corroborated by Miss Sutherland, the secretary and treasurer of appellant, and, to some extent, by other witnesses.

The evidence for appellee shows that the $1,000 note was put up with appellant for the special purpose of securing the $1,200 note, and for no other purpose. The evidence for appellant is equally positive that the note was put up to secure the $1,120 note. The lower court found from the facts that the note was put up to secure the $1,200 note. We are asked to hold that his finding in this respect was not warranted by the testimony, but this we cannot do. The evidence was at least as strong in behalf of appellee as in behalf of appellant, and it appears that the witnesses for appellee were wholly disinterested. There is nothing to indicate that it made any difference to Riley whether the proceeds of his note were applied to the payment of the debt of appellant or the debt of appellee. Mrs. Koerner and Judge Puryear had no interest whatever in the matter. It would be unwarranted on our part to disturb the judgment of the chancellor on this point. The only question for decision was whether the note for $1,000 was to secure the $1,200 note due appellant, or the $1,120 note due appellant, and no other point is raised in either brief.

Counsel for apellant devotes much of his brief to a discussion of the competency of certain evidence which was admitted in the nature of a contract made between Riley and Mrs. Koerner when the land trade was con-

summated.   There was a written contract between them setting out the disposition that was to be made of some of the notes which Mrs. Koerner executed in payment for the land.   The contract provided that the first $1,000 note should be put up to secure the $1,200 note held by appellant.   It is plausibly argued by counsel for appellant that this evidence should not have been admitted because appellant was no party to that contract and knew nothing about it.   Probably he is correct in his contention, although there is respectable authority holding that such collateral evidence is admissible, but we deem it unnecessary to go into that question.   Leaving that evidence entirely out of consideration, the same facts were established by the testimony introduced by appellee.   The judgment of the lower court could not have been affected by the introduction of this contract.   It was not prejudicial, viewed in the light of all the circumstances surrounding this case. At most it was only cumulative, and the preponderance of the evidence was with appellee, leaving the contract entirely out of consideration.

The appellant filed its answer as garnishee after it had received the proceeds of the $1,000 note which it held denying that it was indebted to Riley in any sum.   The lower court found that under all the facts it was so indebted, and that appellant was without right to hold the proceeds of the note.   The note having been placed with appellant for a special purpose, it could not hold it and apply the proceeds on some other indebtedness to it. Masonic Savings Bank v. Bangs, 84 Ky. 135, 8 Ky. Law Rep. 16, 4 Am. St. Rep. 197.   In fact, it is making no claim to any such right, as it rests its defense solely on the ground that the $1,000 note was specially pledged to secure the payment of the $1,120 note on which its proceeds were applied as a credit.

Judgment affirmed.